Lamar ANTHONY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00133–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 4, 2006.

Decided Nov. 30, 2006.

**300**

J. Paul Nelson, Law Office of J. Paul Nelson, Henderson, for appellant.

Bill Saban, Asst. Dist. Atty., Henderson, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Justice ROSS.

Lamar Anthony, Jr., was convicted by a Rusk County jury for trespassing in a city park. The City of Henderson has an unwritten policy delegating to its police officers the authority to ban persons from public parks at the officers' discretion.[1] Shortly after being given notice to remain out of Yates Park[2] by Police Sergeant Bryan Pool, Anthony was observed by Officer Chad Bradley, also a Henderson police officer, in the parking lot adjoining Yates Park. When Bradley informed Pool of his observation, Pool arrested Anthony for criminal trespass. The information filed, charging Anthony with that misdemeanor offense, alleged that Anthony trespassed on property owned by Greg Smith, the city manager of Henderson. After the jury found Anthony guilty, the trial court assessed punishment at ten days' confinement in the county jail.

Anthony appeals, raising four points of error. In his first point, Anthony contends the trespass policy of Henderson, on its face, violates the Due Process Clause of the United States Constitution. He contends, in his second and third points, that the trespass policy is both facially unconstitutional and unconstitutional as applied because it violates the First Amendment to the United States Constitution. Last, Anthony contends the evidence is legally and factually insufficient because the State failed to prove Smith owned Yates Park.

We will first address Anthony's allegation that the unwritten policy violates the Due Process Clause. Although we reject Anthony's substantive due-process argument, we agree the unwritten policy violates procedural due process and is unconstitutionally vague. Because the unwritten policy violates the Due Process Clause, we find it unnecessary to determine whether the policy also violates the First Amendment, either facially or as applied to Anthony. We then address the sufficiency of the evidence and conclude that, even if the State was required to prove ownership of Yates Park, the evidence that Greg Smith had a greater right of possession was sufficient. But because the unwritten policy is unconstitutional, Anthony had effective consent to be at the park during its regular hours of operation. Therefore, the evidence is legally insufficient to support Anthony's conviction for criminal trespass.

## I. FACTUAL BACKGROUND

The evidence showed that, after information was received that Derek Anthony,[3] a suspect wanted on felony drug charges, was "in a vehicle that was inside Yates Park," several members of the Henderson Police Department were dispatched to that location. Apparently, at about the same time, Anthony rode with his cousin, Chris Hill, to Yates Park where they intended to

---

1. Under the Texas Local Government Code, the City of Henderson has the authority to adopt rules concerning the management of a park owned by the city. Section 331.007 of the Local Government Code provides that parks "shall be open for the use of the public under rules prescribed by the governing body of the park...." TEX. LOC. GOV'T CODE ANN. § 331.007 (Vernon 2005); *see also* TEX. LOC. GOV'T CODE ANN. § 331.005 (Vernon 2005). For the purposes of this appeal, we will assume the unwritten policy qualifies as a rule under the Local Government Code.

2. Yates Park is a public park owned by the City of Henderson.

3. We refer to Lamar Anthony by his surname, Anthony. But because there are two other Anthonys—Derek and Stephanie—in this Factual Background, we refer to them (beyond their first mention) by their given names. Pool testified Derek was either a cousin or a brother to Anthony. Anthony referred to Stephanie as his aunt.

play basketball. Officer Amber Tyson detained Hill's vehicle in the parking lot of the park just before Pool arrived.

Pool testified that, when he arrived at the scene, Anthony was engaged in a conversation with Tyson and was "being a little loud" and did not appear to be willing to cooperate. According to Pool, Anthony was "making a statement, such as, . . . 'ya'll are always coming down here in our park harassing us and picking on us. Why can't ya'll just leave us the fuck alone and go to Lake Forest Park and do something over there.'" Because a crowd of approximately ten to fifteen people had gathered, Pool testified he was becoming concerned for the safety of the officers. Pool also testified that Anthony was interfering with the officers' search for the suspect and that he felt Anthony may have been creating a diversion to allow the suspect to escape. Pool further testified he turned toward Anthony and "explained to him, '[l]ook, this is a city park. I am a representative of the City. Therefore, I have a right to say who comes in this park and who doesn't come in this park.'" Pool testified that, because of his past experience with Anthony, he did not believe Anthony respected authority or understood what he had just said, so he told him: "You get your ass out of this park and you don't come back. If you do, I will take you to jail."

On cross-examination, Pool admitted he told Anthony to leave the park after Anthony had informed Hill that the police did not have a warrant to search his car. Pool denied, however, that he told Anthony to leave the park because Anthony had advised Hill of his legal rights. Pool further testified that, when a person receives what the City describes as a "criminal trespass warning," there is no set time limit for that warning to expire, and it is effective "from now on."

Anthony and Hill testified to a similar, although slightly different, series of events. Anthony denied being loud when conversing with Tyson and, in fact, denied even talking to Tyson. Hill testified that Tyson merely requested to see Hill's driver's license and proof of insurance. Anthony testified that, when Pool requested to look in the car's trunk, he asked Pool, "What do you want to search the car for?" According to Anthony, Pool responded, "That's none of your business, you need to get out of my park."

Approximately ten to fifteen minutes later, the police department received an anonymous call that Derek was possibly in a truck that was in Yates Park. Police officers were again dispatched to the park. There, Officer Bradley detained a pickup truck in the middle of the parking lot of the park. The driver of that truck was Stephanie Anthony. Bradley testified Anthony was in the truck when Bradley initiated contact with Stephanie. Stephanie testified that, just before she was detained by Bradley, Anthony had gotten in the truck with her and she intended to drive him home. However, when Bradley arrived, Anthony exited the truck and left the park. Because Bradley was not aware Anthony had been given a warning to remain out of the park, he let Anthony leave.

When Pool arrived in response to the second call, he observed Anthony standing in the entrance to the parking lot of Yates Park. Anthony was in the process of getting into Hill's car. Pool detained Anthony and then asked Bradley whether Anthony had been in the park. Bradley confirmed that he had, and Pool then arrested Anthony. Pool testified that, because he was not certain where the property line of the park was located, he did

not personally observe Anthony in the park.[4] It is uncontested that Anthony was at the park during the park's regular hours of operation.[5]

Smith testified Yates Park is owned by the City of Henderson. Although Smith testified he did not personally own the park, he did testify the City of Henderson has a greater right of possession than Anthony and that he (Smith) manages all "day to day operations" of the City. Smith also testified he had delegated to the city police officers the authority to issue what the City describes as "criminal trespass warnings." The City's unwritten policy delegates to individual officers the authority to issue warnings, banning individuals from the park. The determination of who is banned is made on a case-by-case basis and left to the discretion of the individual officer. The City has no written criteria to guide the officers in exercising their discretion. Smith testified that, if it was brought to his attention that an officer was being arbitrary or capricious, he would overrule the officer's decision.[6] When asked whether the appeal procedure was in writing, Smith testified, "[n]ot to my knowledge." Smith also testified he has never had anyone "appeal" a warning.

## II. THE UNWRITTEN POLICY VIOLATES THE DUE PROCESS CLAUSE

 The Due Process Clause of the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. When an attack on the constitutionality of a statute or regulation is presented for determination, we begin with the presumption that the statute or regulation is valid. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Morris v. State*, 833 S.W.2d 624, 627 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd). A party challenging a statute on the basis that the statute violates the Due Process Clause of the Fourteenth Amendment bears the burden of demonstrating the scheme's unconstitutionality. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001); *Granviel*, 561 S.W.2d at 511.

Before we can delve into the merits of Anthony's due-process arguments, we must first decide two preliminary issues. First, we must decide whether the due-process arguments are preserved. After concluding that a facial due-process challenge can be raised for the first time on appeal, we will address whether Anthony

---

**4.** We note that Anthony contends his arrest was illegal because Pool did not personally observe Anthony in the park. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 2005); *see also McGee v. State*, 105 S.W.3d 609, 614 (Tex.Crim.App.2003). It is unnecessary for us to determine whether a warrantless arrest was permissible. Even if the arrest was illegal, an acquittal is not required. It has long been the rule in Texas that an illegal arrest does not render a conviction void where the conviction is not tainted by the illegality of the arrest. *Johnson v. State*, 548 S.W.2d 700, 706 (Tex.Crim.App.1977); *Frazier v. State*, 481 S.W.2d 857, 859 (Tex.Crim.App.1972); *Brennan v. State*, 140 S.W.3d 779, 780 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). The appropriate sanction for an illegal arrest is

the exclusion of evidence associated with that illegal arrest. *Brennan*, 140 S.W.3d at 780. Anthony does not contend there is any evidence which should have been suppressed due to the allegedly illegal arrest.

**5.** Pool testified the hours of Yates Park were 7:00 a.m. to midnight. He further testified that he issued the warning at approximately 5:57 p.m. The record is not clear when Anthony was arrested, but the State contends it was approximately fifteen minutes after receiving the warning to stay out of the park.

**6.** Pool testified he never informed Anthony he could appeal Pool's decision to the city manager.

had a protected liberty or property interest in Yates Park. Delving into the merits, we then address whether the unwritten policy violates substantive due process, is unconstitutionally vague, or violates procedural due process.

### A. Facial Challenge Can be Raised for the First Time on Appeal

The State contends Anthony failed to preserve error on his due-process argument. After the State rested, and again at the conclusion of trial, Anthony requested a directed verdict.[7] Although Anthony did challenge the constitutionality of the unwritten policy, the State contends Anthony failed to advance the same due-process arguments raised on appeal. Anthony's due-process argument, though, only presents a facial challenge to the City's criminal trespass rule. An appellant does not waive error if he or she fails to raise a facial constitutional challenge to a statute at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990); *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd); *Bryant v. State*, 47 S.W.3d 80, 84 (Tex. App.-Waco 2001, pet. ref'd); *see Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App. 1987). A facial challenge claims that a statute is "invalid in toto—and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Even if Anthony failed to argue to the trial court that the unwritten policy violated the Due Process Clause, Anthony can still raise a facial challenge to the unwritten policy on appeal.

### B. There is a Protected Liberty or Property Interest

Both substantive and procedural due process require a protected liberty or property interest to be deprived by state action. The first inquiry in every due-process challenge is whether the complaining party has been deprived of a protected interest in "property" or "liberty." *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The United States Supreme Court has held that "the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty." *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); *see Papachristou v. Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir.2002) (Constitution protects right to travel locally through public spaces and roadways). Anthony argues he has both a liberty and property interest in Yates Park. Regardless of whether Anthony had a property interest in Yates Park as a member of the public, Anthony clearly had a liberty interest in the park. However, Anthony's liberty interest, as explained below, is not a fundamental right.

### C. The Unwritten Policy Does Not Violate Substantive Due Process

In a substantive due-process analysis, we determine (1) whether the plaintiff had a protected liberty interest,

---

**7.** In addition, Anthony filed a motion for judgment notwithstanding the verdict (j.n.o.v.). All of Anthony's issues are preserved in his motion for j.n.o.v., but, as the State correctly points out, a motion for j.n.o.v. is not available in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(7) (Ver-non Supp.2006); *State v. Savage*, 933 S.W.2d 497, 499 (Tex.Crim.App.1996); *Dunn v. State*, 176 S.W.3d 880, 885 (Tex.App.-Fort Worth 2005, no pet.). Further, the substance of the motion does not indicate it should be construed as a motion for new trial.

and (2) if the government deprived him or her of that interest capriciously and arbitrarily. *See Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *Dallas County v. Gonzales,* 183 S.W.3d 94, 111 (Tex.App.-Dallas 2006, no pet.). Anthony argues that the policy denies a fundamental right. Denial of a fundamental right would require a compelling governmental interest. However, if there is no fundamental right, substantive due process merely requires a rational relationship between the regulation and the right being destroyed.

### 1. There Is No Fundamental Right

■■■ If a fundamental right is involved, the State must show a compelling interest. Substantive due process forbids the government to infringe certain "fundamental" liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *See, e.g., Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Anthony contends the unwritten policy deprives him of his constitutional rights of free speech, freedom of association, and right to travel. In addition, Anthony contends the freedom to loiter or associate for innocent purposes is part of the liberty protected by the Due Process Clause.

■■■ Anthony has failed to cite controlling authority that his liberty interest in the park is a "fundamental right." Anthony does cite *Fears,* 179 U.S. at 274, 21 S.Ct. 128; *Papachristou,* 405 U.S. at 164, 92 S.Ct. 839; and *Kent,* 357 U.S. at 126, 78 S.Ct. 1113, for this proposition. However, merely having a liberty or property interest guaranteed by the Constitution is not equivalent to having a fundamental right. Not all rights secured by the Federal Constitution are fundamental rights but, only

"those which lie at the heart of the relationship between the individual and republican form of nationally integrated government." 16A AM.JUR.2D CONSTITUTIONAL LAW § 397 (1998) (citing *Kalodimos v. Vill. of Morton Grove,* 103 Ill.2d 483, 83 Ill.Dec. 308, 470 N.E.2d 266 (1984)).

We note that, in a plurality decision of the United States Supreme Court, Justices Stevens, Ginsburg, and Souter suggested that the freedom to loiter for innocent purposes is a fundamental right. *See Chicago v. Morales,* 527 U.S. 41, 53–54, n. 20, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (Stevens, J., joined by Souter, J., and Ginsburg, J.) (plurality of United States Supreme Court held: "Freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause" and suggesting there is fundamental right to loiter for innocent purposes). However, a plurality opinion has limited precedential value. *See Moore v. State,* 969 S.W.2d 4, 9 (Tex.Crim.App.1998). While we agree, as discussed above, that Anthony had a liberty interest in the park, we are not convinced Anthony had a fundamental right to use the park. *See Cent. Tex. Nudists v. County of Travis,* No. 03–00–00024–CV, 2000 WL 1784344, 2000 Tex.App. LEXIS 8136 (Tex.App.-Austin 2000, pet. denied) (not designated for publication) (age restriction on clothing-optional public park did not violate fundamental right); *see also Doe v. City of Lafayette,* 377 F.3d 757, 772 (7th Cir.2004) (convicted sex offender had no fundamental right to loiter in public park).

### 2. Policy Is Constitutional Under the Rational Relationship Test

■■■ The State argues that the policy has a rational relationship to the right being denied. The test of whether a regulation which does not affect a fundamental right violates substantive due process is

whether the government was acting in pursuit of permissible state objectives and, if so, whether the means adopted were reasonably related to accomplishment of these objectives. *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 291 (5th Cir.2001); *Simi Inv. Co. v. Harris County,* 236 F.3d 240 (5th Cir. 2000). Maintenance of order in a public park is a legitimate state objective, and there is a rational relationship between a policy allowing exclusion from the park of individuals who breach the peace and the maintenance of order in a public park. The regulation does not violate substantive due process.

### D. Policy Is Unconstitutionally Vague

■■■■ Also included in due process is the vagueness doctrine. Anthony argues the unwritten policy is inherently vague and the "vague statutory language permits selective law enforcement." There is also a denial of due process where inherently vague statutory language permits selective law enforcement. *Smith v. Goguen,* 415 U.S. 566, 576, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). In order to satisfy constitutional due-process requirements, the statute or regulation must provide adequate notice of the required or prohibited conduct. *Freeman United Coal Mining Co. v. Fed. Mine Safety & Health Review Comm'n,* 108 F.3d 358, 362 (D.C.Cir.1997); *see Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou,* 405 U.S. at 162, 92 S.Ct. 839; *State v. Holcombe,* 187 S.W.3d 496, 499 (Tex.Crim.App.2006). Although

the regulation must give fair warning—in light of common understanding and practices—of the prohibited conduct, the regulation is not required to be mathematically precise. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294; *Ex parte Anderson,* 902 S.W.2d 695, 698 (Tex.App.-Austin 1995, pet. ref'd). The regulation, though, must be defined with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Holcombe,* 187 S.W.3d at 499.

■■■ The unwritten policy at issue here is not premised on a violation of specific park rules. The policy delegates complete discretion to the police officer, and there are no guidelines for the exercising of that discretion.[8] A reasonable person would not have fair warning of what conduct would violate that regulation. Not only are the policy's prohibitions not clearly defined, the policy presents substantial risk of arbitrary and discriminatory enforcement. While there is no evidence Pool used this policy in a discriminatory manner, the policy presents significant risk it could be used in such a manner. The unwritten policy is unconstitutionally vague.

### E. The Unwritten Policy Violates Procedural Due Process

■■ In addition, Anthony contends the unwritten policy violates his right to procedural due process. At a minimum, due process requires a person who may be deprived of a liberty or property interest to be provided notice and an opportunity to be heard at a meaningful time and in a

---

**8.** The State cites *Allen v. State,* No. 12–01–00079–CR, 2003 WL 1090366, 2003 Tex.App. LEXIS 2188 (Tex.App.-Tyler Mar. 12, 2003, no pet.) (mem. op., not designated for publication) (apartment complex parking lot), and *State v. Jackson,* 849 S.W.2d 444, 446 (Tex. App.-San Antonio 1993, no pet.) (apartment complex), for the proposition that a property owner may delegate to security guards or other agents the authority to deny entry to property. Because these cases involve private property, they are clearly distinguishable.

meaningful manner. *Mathews,* 424 U.S. at 333, 96 S.Ct. 893; *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 930 (Tex.1995); *see Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *cf. Perry v. Del Rio,* 67 S.W.3d 85, 92 (Tex. 2001) (due course of law under the Texas Constitution). Anthony contends the policy of the City, which allows police officers to exercise unfettered discretion to ban persons from public property intended for use by the general public, is a violation of the right to procedural due process.

 In analyzing a claim of deprivation of procedural due process, we apply a two-part test: (1) whether the plaintiff had a liberty or property interest entitled to procedural due process; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Than,* 901 S.W.2d at 929. In determining what process is required, we utilize a flexible standard that depends on the practical requirements of the circumstances. *Mathews,* 424 U.S. at 334, 96 S.Ct. 893; *Than,* 901 S.W.2d at 930.

> This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Than,* 901 S.W.2d at 930; *see Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

 The State argues the City has properly delegated authority to police officers and it must be presumed, in the absence of evidence to the contrary, that the officers are expected to exercise that discretion within the bounds of their duties under Article 2.13 of the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 2.13 (Vernon 2005). However, a police officer's exercise of duties and powers under that provision must be pursuant to policies and procedures that do not violate the due process of law. Here, the City's unwritten policy includes no guidelines to the police officer in exercising his or her discretion to ban a person from the park, and it contains no guidelines or procedures for the "appeal" process. As such, it is procedurally deficient and denies due process.

 Further, under the unwritten policy, the decision to exclude a person from the park is made before the person has a chance to present any evidence in his or her favor and without any evidence being presented against him or her. Due process is ordinarily absent if a party is deprived of his or her property or liberty without evidence having been offered against him or her in accordance with established rules. *In re Application of Eisenberg,* 654 F.2d 1107, 1112 (5th Cir. 1981). Further, due process ordinarily includes the right to confront witnesses. *Wolff v. McDonnell,* 418 U.S. 539, 559, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *but see Brock v. Roadway Express, Inc.,* 481 U.S. 252, 262, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Most important, due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

 The State argues, without citing any authority, that, because Anthony was arrested less than fifteen minutes after receiving the warning, Anthony's due-process rights were not violated. The State further argues that the appeal process satisfies any possible due process concerns.

In some circumstances, the United States Supreme Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process. *Zinermon v. Burch*, 494 U.S. 113, 128, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Even if it would be impractical to provide predeprivation process, the City's appeal process is not adequate. While a temporary order pending a hearing may be adequate,[9] the decision in this case is a final ex parte determination. An appeal is inadequate because the decision has already been made without the ability to present evidence for or against the deprivation. An appeal will not cure the failure to provide a neutral and detached adjudicator. *Ward v. Monroeville*, 409 U.S. 57, 61, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). Further, Anthony was not informed of the appeal procedure. While Pool did not explicitly state his decision was final, his statements left an impression of finality. Pool, himself, testified he viewed the decision as effective from that point on. Last, there are no procedures in the appeal process for the presentation of evidence for or against a violation.

■■■■■ After weighing the three factors, we conclude the City's unwritten policy does not meet the requirements of procedural due process. Although the fiscal and administrative burdens may weigh against a due-process violation, this factor is greatly outweighed by the other factors. Due process requires state procedures to provide proper procedural safeguards before a claimant's property or liberty interest is destroyed. *See Thoyakulathu v. Brennan*, 192 S.W.3d 849, 854 (Tex.App.-Texarkana 2006, no pet.). The unwritten policy fails to provide an opportunity to be heard at a meaningful time and in a meaningful manner. The policy does not provide for a hearing or a neutral magistrate. Under the unwritten policy, a person is deprived of his or her property or liberty without evidence having been offered against him or her or the opportunity to present evidence on his or her own behalf. "The Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Although there is no evidence Pool intended to exercise his discretion in an oppressive manner, the unwritten policy contains insufficient checks to prevent such discretion from being exercised in an oppressive manner. The unwritten policy fails to afford procedural due process.

**F. The Unwritten Policy Is Not Susceptible to a Narrowing Construction**

■■■■■ If a reasonable construction can be ascertained which will render the statute constitutional, we must uphold the statute. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979); *Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex.App.-Austin 1995, pet. ref'd); *State v. Fry*, 867 S.W.2d 398, 400 (Tex.App.-Houston [14th Dist.] 1993, no pet.). If a statute is "susceptible to a narrowing construction consistent with its language and apparent purpose," the statute should not be invalidated. *Olvera v.*

---

9. We note a person may be banned, without a court-ordered injunction, from a public park under the care and control of the Texas Department of Parks and Wildlife for up to forty-eight hours. *See* TEX. PARKS & WILDLIFE CODE ANN. § 13.108 (Vernon 2002).

*State,* 806 S.W.2d 546, 552 (Tex.Crim.App. 1991). "However, a court may not assume the legislative prerogative and rewrite a statute in order to save it if the statute is not readily subject to a narrowing construction." *Id.* Without completely rewriting the policy, there is no reasonable interpretation of the unwritten policy that would be constitutional. We are unable to sever the unconstitutional portion of the unwritten policy, and the unwritten policy is not susceptible to a narrowing construction.

### G. Summary

We reject the State's argument that Anthony was required to raise due process at the trial court level and hold that Anthony had a protected liberty interest in Yates Park. Although we reject Anthony's argument that the unwritten policy violates substantive due process, we conclude the unwritten policy fails to meet the requirements of procedural due process and is unconstitutionally vague. We sustain Anthony's first point of error.[10]

### III. The Evidence Is Legally Insufficient

■ Anthony also alleges that the evidence is legally and factually insufficient to support a conviction for criminal trespass. He contends that there was no evidence the park was owned by Smith and that the concept of a "greater right to possession" does not apply to criminal trespass. *See, e.g., Palmer v. State,* 764 S.W.2d 332, 334 (Tex.App.-Houston [1st Dist.] 1988, no

pet.). In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Although we reject Anthony's argument that the State failed to prove ownership of the park, the evidence is legally insufficient because Anthony had effective consent to be in the park.

### A. Proof of a Greater Right of Possession Is Sufficient

■ Under the Texas Penal Code, the offense of criminal trespass does not require the State to prove ownership of the property trespassed on, but merely requires proof the property belonged to "another." TEX. PENAL CODE ANN. § 30.05(a) (Vernon Supp.2006). In this case, though, the State alleged in the information that Smith owned the property being trespassed on. Anthony contends that the State was required to prove this allegation and that the State's proof of a greater right of possession is insufficient.

■ The Texas Court of Criminal Appeals has held the phrase "the owner thereof" may be substituted for the statutory word "another." *State v. Kinsey,* 861 S.W.2d 383, 384 (Tex.Crim.App.1993). Assuming the State was required to prove Smith was the owner,[11] proof of a greater

---

10. We note that Smith testified the unwritten policy in this case is substantially similar to the City of Henderson's trespass policy for property owned by the housing authority. We emphasize that this opinion does not decide the constitutionality of the City's trespass policy for property owned by the housing authority. We also emphasize this opinion does not decide whether a police officer could constitutionally order a person interfering with his or her duties to disperse. This opinion is limited to the constitutionality of the City's policy which allows a police officer to permanently ban a person from a public park at the officer's unfettered discretion.

11. We note the State contends it was not required to prove ownership. The Texas Court of Criminal Appeals has held, when the State alleges an owner of the property—which is not a necessary allegation to prove the offense of criminal trespass—the State is

right of possession is sufficient. The Texas Court of Criminal Appeals has also held the definition of "owner" under the former subsection 1.07(a)(24) [12] of the Texas Penal Code is applicable to trespass cases where the State alleges ownership. *Langston*, 855 S.W.2d at 720 n. 7; *Arnold*, 867 S.W.2d at 379. Therefore, in criminal trespass cases where the State alleges ownership, subsection 1.07(a)(35), the current section, is applicable and the State may establish ownership by proving, beyond a reasonable doubt, that the complainant had a greater right to possession of the property than the defendant. *See Arnold*, 867 S.W.2d at 379; *see also* TEX. PENAL CODE ANN. § 1.07(a)(35). The State introduced evidence that Smith had a greater right of possession. Thus, the evidence of ownership is sufficient even if the State was required to prove ownership.

### B. Anthony Had Effective Consent To Be in the Park

■ The State contends Pool's authority to exclude persons from the park is not relevant to the validity of the criminal trespass conviction. We disagree. Because Pool lacked authority to exclude a person from the park, the evidence is legally insufficient to support the effective consent prong of criminal trespass. Section 30.05 of the Penal Code provides:

(a) A person commits an offense if he enters or remains on or in property, including an aircraft or other vehicle, of another without effective consent or he enters or remains in a building of another without effective consent and he:

(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so.

TEX. PENAL CODE ANN. § 30.05(a). As discussed above, the unwritten policy violates the Due Process Clause. Pool's authority to exclude Anthony from the park is based solely on the unwritten policy. Because the unwritten policy is void, Pool lacked authority to exclude Anthony from the park under this policy. Thus, Anthony, as a member of the public, had effective consent to be in the park during the ordinary hours of operation. The evidence is legally insufficient.

### IV. CONCLUSION

Although the City's unwritten policy does not violate substantive due process, the policy clearly violates procedural due process and is unconstitutionally vague. Because the unwritten policy of the City of Henderson gives police officers unfettered discretion to determine who should be ex-

required to prove that allegation. *Langston v. State*, 855 S.W.2d 718, 721 (Tex.Crim.App. 1993); *see also Arnold v. State*, 867 S.W.2d 378, 379 (Tex.Crim.App.1993) (trespass at courthouse). However, since *Langston* and *Arnold* were decided, the Texas Court of Criminal Appeals has mandated sufficiency of the evidence must be analyzed under the hypothetically correct jury charge. *Gharbi v. State*, 131 S.W.3d 481, 483 (Tex.Crim.App. 2003) (allegation which is not statutory element or "an integral part of an essential element of the offense" does not have to be included in hypothetically correct jury charge); *see Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (allegation which is not statutory element does not have to be

included in hypothetically correct jury charge); *see also Gollihar v. State*, 46 S.W.3d 243, 256 (Tex.Crim.App.2001) (explicitly overruling surplusage law and *Burrell* exception). However, it is not necessary for us to determine what impact, if any, the hypothetically correct jury charge doctrine has on the holdings of *Langston* and *Arnold*.

12. In 1993, the Legislature renumbered the former subsection 1.07(a)(24) as subsection 1.07(a)(35) without a substantive change to the text of the subsection. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3589 (codified at TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon Supp. 2006)).

cluded from Yates Park and fails to provide for any hearing, the policy, on its face, violates procedural due process. Further, the unwritten policy is unconstitutionally vague since the policy fails to give adequate notice of what conduct is prohibited. Because the unwritten policy relied on by Pool is unconstitutional, Pool lacked authority to ban Anthony from Yates Park under such policy. The evidence, therefore, is legally insufficient to support a conviction for criminal trespass.

For these reasons, we reverse the judgment of conviction and render a judgment of acquittal.