

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00092-CR

_____

MICHAEL JOSEPH SANDERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 1
Denton County, Texas
Trial Court No. 2011-03321-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Michael Joseph Sanderson was convicted by a jury of criminal trespass on University of North Texas (UNT) property, sentenced to thirty days' confinement in the Denton County Jail, and ordered to pay a $250.00 fine.[1] On appeal, Sanderson prefaces his complaints with the theory that he could not be denied access to the UNT Willis Library, a federal and state depository library to which he had a liberty interest.[2] Based on this theory, Sanderson argues that (1) the UNT Police Department policy is unconstitutionally vague and violates due process, (2) the criminal trespass statute is unconstitutional as applied to him because the absence of a valid method for reviewing the initial criminal trespass warning denied him due process, (3) the trial court erred in denying his motion for instructed verdict, and (4) the evidence is insufficient to support his conviction because the original criminal trespass warning violates due process. Rejecting these arguments, we affirm the trial court's ruling.

---

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] "[A]s the United States recognizes, the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999). The United States Supreme Court has "expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution." *Id.* (quoting *Williams v. Fears*, 179 U.S. 270, 274 (1900) (citing *Papachristou v. Jacksonville*, 405 U.S. 156, 164 (1972))). "Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage' . . ., or the right to move 'to whatsoever place one's own inclination may direct.'" *Id.* at 54 (quoting *Kent v. Dulles*, 357 U.S. 116, 126 (1958); 1 WILLIAM BLACKSTONE, COMMENTARIES *130).

## I.      Factual and Procedural Background

In 2007, Edward Rollins, a sergeant with the UNT Police Department, was patrolling Willis Library[3] when he noticed Sanderson walking from the building in a suspicious manner. When questioned, Sanderson claimed that he had no identification and gave Rollins a false name. Rollins "noticed an outline of what looked to be some type of ID card in his front pocket" and retrieved it. The card was "a Texas offender card" carried by Sanderson as a consequence of a "sex offense" he had previously committed. Sanderson was arrested for providing false identification and admitted to Rollins that although he was required to register as a sex offender and previously registered as such, he had not done so in Denton County. Rollins also testified that Sanderson was homeless and that he was concerned about Sanderson "[l]oitering and sleeping in buildings."

The UNT Police Department had a written policy to "issue persons with no affiliation with the university and who pose a threat to persons or property on campus a criminal trespass warning." It also prescribed that "[p]ersons arrested on campus for a criminal act and who have no affiliation with the university, shall be issued a criminal trespass warning for all UNT Property." The policy provides that the "following factors should be used to assist the officer in making" the decision to issue a criminal trespass warning:

1.      Is the person a danger to persons or property?
2.      Does the person possess a Criminal History that indicates the individual could pose a threat to the UNT community?
3.      Does the person have any affiliation with the University?
4.      Was the person apprehended while committing a crime?
5.      Is the person a transient/homeless individual loitering on campus?

---

[3]Rollins testified that Willis Library is a federal book depository.

Pursuant to that written policy, Rollins issued a criminal trespass warning to Sanderson during the arrest. The 2007 criminal trespass warning as issued stated,

> You are officially informed and notified not to be on the following property or premises owned or controlled by the University of North Texas:
>
> ALL UNT Properties owned or controlled by UNT
>
> . . . . You are not to be on these premises at any time or you will be subject to arrest for Criminal Trespass.

The warning also informed Sanderson, "This order may be appealed by submitting a letter to the University Police Department requesting a review of this action." No evidence was presented that Sanderson attempted to appeal.

About three years later (April 18, 2011), Rollins encountered Sanderson on the UNT grounds, whereupon Rollins asked Sanderson "if he had taken the proper steps to have the trespass lifted, and he said something to the effect, he was just passing through." Sanderson admitted that he knew he was not supposed to be on UNT's campus. Rollins "called Dispatch" to verify that the trespass warning was still in effect, and Rollins was also informed at that time that Sanderson "had an active warrant for failure to register" as a sex offender. Sanderson was placed under arrest for criminal trespass.

On the day of trial, Sanderson's counsel filed a motion to dismiss the indictment, arguing that (1) the original criminal trespass warning violated his right to due process by restricting his liberty interest to a federal depository library, (2) the original trespass warning was "vague and allow[ed] for arbitrary and discriminatory enforcement," (3) Section 30.05(a) of the Texas Penal Code is unconstitutionally overbroad, and (4) the current criminal trespass warning "should be

4

dismissed" because it did not "allow for constitutionally required due process." The trial court

denied the motion.[4]

Throughout the trial, Sanderson reiterated the arguments[5] contained in the motion to

quash and even requested an instructed verdict "based upon the grounds in my motion to

dismiss." These arguments were rejected, and Sanderson was convicted of trespass.

---

[4]Sanderson does not appeal the trial court's denial of the motion. We note that appellate courts review trial courts' rulings on motions to dismiss an indictment for abuse of discretion, and this standard cannot be met where a party waits until the day on which trial on the merits commences to file the motion. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh'g); *see Sanchez v. State*, 138 S.W.3d 324, 330 (Tex. Crim. App. 2004); *see State v. Turner*, 898 S.W.2d 303 (Tex. Crim. App. 1995), *overruled on other grounds*, *Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005), art. 45.019(f) (West 2006).

[5]The State objected during Rollins' cross-examination, which led to the following argument by Sanderson's counsel:

[BY THE STATE]: Yes, Your Honor, just that his intended use of the federal book depository is to say that it's -- this criminal trespass warning and eventual criminal trespass was not valid. And as previously mentioned, he can be trespassed from public property, and the Court denied his motion to dismiss on this specific issue. So I'm not sure of any relevant purpose he's asking these questions for.

THE COURT: I -- I agree.
What relevant purpose would there be for that?

[COUNSEL FOR SANDERSON]: The relevant purpose is to get evidence in front of the jury, Your Honor, to entitle me to a jury instruction.

THE COURT: As to?

[COUNSEL FOR SANDERSON]: As to what the law is regarding federal book depositories and what the law is regarding state book depositories.

THE COURT: As to what?

[COUNSEL FOR SANDERSON]: As to the right of the public to have access to them.

THE COURT: Okay. So are you saying that -- that you can't criminal trespass people on certain properties?

[COUNSEL FOR SANDERSON]: I'm saying that you can't criminal trespass people on certain properties absence [sic] a showing of due process. I'm going to show that there is not

5

## II. Sanderson's "As Applied" Constitutional Challenges Fail

The Due Process Clause of the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "When an attack on the constitutionality of a statute or regulation is presented for determination, we begin with the presumption that the statute or regulation is valid." *Anthony v. State*, 209 S.W.3d 296, 303 (Tex. App.—Texarkana 2006, no pet). A party challenging a statute on the basis that the statute violates the Due Process Clause of the Fourteenth Amendment bears the burden of demonstrating the scheme's unconstitutionality. *Id.* (citing *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001)).

We have previously written that

[b]oth substantive and procedural due process require a protected liberty or property interest to be deprived by state action. The first inquiry in every due-process challenge is whether the complaining party has been deprived of a protected interest in "property" or "liberty." The United States Supreme Court has held that "the right of locomotion, the right to remove from one place to

---

effective due process in the issuance of University of Texas Police Department criminal trespass warnings, because there's no provision for an independent review by an impartial magistrate.

THE COURT: I'm going to deny that. I'm going to sustain the State's objection. . . .

Sanderson's counsel clarified:

[COUNSEL FOR SANDERSON]: Okay. And I -- the questions that I would propound to the jury is -- I would ask Sergeant Rollins if he is aware that -- that Title 44 -- Title 44, U.S. Code, Section 1900, et sequentes, provides the laws regarding federal book depositories, among them are the fact that -- that the libraries shall be made available for the free use of the general public. Secondly, I would ask questions regarding the state library depositories under Texas Government Code, Section 441, et sequentes, that the people of Texas will have access to and effectively use information or title resources, public records in the library in order to improve their lives, the lives of their families, and their communities, and that their philosophy is that all Texans have the right to barrier-free access to library informational services to meet personal and professional needs, interests, provided by well-trained -- that's the part of the statute that I'm asking. Those are the questions that I would propound to the jury.

6

another according to inclination, is an attribute of personal liberty." (Constitution protects right to travel locally through public spaces and roadways).

*Id.* at 304 (citations omitted).

Sanderson argues that the criminal trespass statute is unconstitutional as applied to him because it deprived him of his liberty interest in the UNT public library. He raises a *substantive* due-process claim based on the contention that the UNT Police Department policy and the original criminal trespass warning were unconstitutionally vague and a *procedural* due-process claim based on the alleged denial of a neutral and detached magistrate. We address each of these arguments in turn.

### A. The UNT Police Department Policy Is Not Unconstitutionally Vague

In a substantive due-process analysis, we determine (1) whether the plaintiff had a protected interest and (2) if the government deprived him of that interest capriciously and arbitrarily. *Id.* at 304–05 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 111 (Tex. App.—Dallas 2006, no pet.)).

Sanderson argues that his liberty interest in the Willis Library stems from its designation as a federal depository library.[6] While Sanderson believes that the liberty interest is a fundamental right, he fails to cite to any controlling authority that supports this contention, and we have found no such authority in our own search. "[M]erely having a liberty or property

---

[6]The federal depository system was created to provide the public with widespread access to government documents. *See* 44 U.S.C.A. § 1909 (West, Westlaw current through 2013) (depository library should be located in an area where it can best serve the public need). "Depository libraries shall make Government publications available for the free use of the general public, and may dispose of them after retention for five years under section 1912 of this title, if the depository library is served by a regional depository library." 44 U.S.C.A. 1911 (West, Westlaw current through 2013).

7

interest guaranteed by the Constitution is not equivalent to having a fundamental right." *Id.* at 305.

"A university differs in significant respects from public forums such as streets or parks in that a university's mission is education." *Spingola v. State*, 135 S.W.3d 330, 334 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "A campus need not make all of its facilities equally available to students and non-students alike, nor must a university grant free access to all of its grounds or buildings." *Id.* at 334–35. "The University of Texas campus is generally a nonpublic forum." *Bader v. State*, 15 S.W.3d 599, 605 (Tex. App.—Austin 2000, pet. ref'd). Also, a library is a limited public forum for purposes of a First Amendment analysis. *See Rhim v. Hancock County Public Library*, No. 1:12-CV-01474-RLY-TAB, 2013 WL 3155491, at \*\*10–12 (S.D. Ind. 2013); *Sund v. City of Wichita Falls, Tex.*, 121 F.Supp.2d 530, 548 (N.D. Tex. 2000) (citing *Kreimer Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1259 (3rd Cir. 1992) (finding rule prohibiting behavior that harasses or annoys others in library fundamentally reasonable, not violative of First Amendment)). The Texas Education Code provides,

> The governing board of a state institution of higher education or its authorized representatives may refuse to allow persons having no legitimate business to enter on property under the board's control, and may eject any undesirable person from the property on his refusal to leave peaceably on request. Identification may be required of any person on the property.

TEX. EDUC. CODE ANN. § 51.209 (West 2012). "It is unlawful for any person to trespass on the grounds of any state institution of higher education," regardless of its status as public property. TEX. EDUC. CODE ANN. § 51.204 (West 2012).

8

While we agree that Sanderson had a liberty interest (along with the general public) to use the library, we are not convinced that this interest is a fundamental right. *See Anthony*, 209 S.W.3d at 305 (citing *Doe v. City of Lafayette*, 377 F.3d 757, 772 (7th Cir. 2004) (convicted sex offender had no fundamental right to loiter in public park)).

Sanderson does not contend that the UNT Police Department policy fails to meet the rational relationship test.[7] Instead, he argues that the policy is vague because it "allows for arbitrary enforcement without any guiding principles because it fails to convey what they are violating."[8] There is denial of due process where a policy permits selective law enforcement through inherently vague language. *Id.* at 306. "In order to satisfy constitutional due-process requirements, the statute or regulation must provide adequate notice of the required or prohibited conduct" such that an ordinary person "'can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.'" *Id.* (quoting *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006)).

As applied to Sanderson, we find that the UNT Police Department policy was not unconstitutionally vague. The policy stated that persons arrested on campus for a criminal act who have no affiliation with UNT shall be issued a criminal trespass warning. In 2007, Sanderson was arrested for providing Rollins with false identification, and Rollins also admitted

---

[7]"The test of whether a regulation which does not affect a fundamental right violates substantive due process is whether the government was acting in pursuit of permissible state objectives and, if so, whether the means adopted were reasonably related to accomplishment of these objectives." *Anthony*, 209 S.W.3d at 305–06 (citing *Reno v. Flores*, 507 U.S. 292 (1993); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001); *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240 (5th Cir. 2000)).

[8]Sanderson argues that the trespass warning is defective because it "fails to denote a specific period of time for which a person may be criminally trespassed." This argument was not presented to the trial court, and we will not consider it. Further, the policy in effect at the time of Sanderson's arrest stated that "[t]respass warnings will be enforced for a period of five years from the date of issuance."

at that time to the criminal act of failing to register as a sex offender. The policy left Rollins with no discretion, requiring him to issue Sanderson the criminal trespass warning.[9] When Sanderson was arrested in 2011, he admitted that he knew he was not supposed to have entered onto UNT property.

We overrule Sanderson's substantive due-process challenge to the UNT Police Department policy.[10]

---

[9]The policy also mandates the Police Department "issue persons with no affiliation with the university and who pose a threat to persons or property on campus a criminal trespass warning." To determine whether a nonaffiliated person posed a threat, the policy provided several factors for law enforcement to consider, including whether the person (1) possessed a criminal history that indicates the individual could pose a threat to the UNT community, (2) was apprehended while committing a crime, and (3) was a transient/homeless individual loitering on campus.

[10]In addition to arguing that the UNT Police Department policy was vague, Sanderson argues that Section 30.05 of the Texas Penal Code is vague and allows for arbitrary enforcement. The pertinent portions of the statute read:

> (a)    A person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building, or an aircraft or other vehicle, without effective consent and the person:
>> (1)    had notice that the entry was forbidden; or
>> (2)    received notice to depart but failed to do so.
> (b)    For purposes of this section:
>> (1)    "Entry" means the intrusion of the entire body.
>> (2)    "Notice" means:
>>> (A)    oral or written communication by the owner or someone with apparent authority to act for the owner . . . .

TEX. PENAL CODE ANN. § 30.05 (West Supp. 2013). In our review of Sanderson's brief, we find that he has raised many arguments that were not presented to the trial court in the motion to dismiss the indictment, or otherwise. We need not consider these arguments. Further, it appears that Sanderson's claim that the statute is vague and unconstitutional at trial rested on the arguments we reject in this opinion. Sanderson's conclusory statements in his motion and brief fail to present argument as to why the particular language of this statute resulted in arbitrary enforcement as applied to him.

10

**B. Sanderson Was Afforded Procedural Due Process**

Sanderson argues that the UNT Police Department policy violated his right to procedural due process because he was denied "review by a neutral and detached magistrate." The record does not support Sanderson's claim.

Due process requires a person who may be deprived of a liberty interest to be provided notice and an opportunity to be heard at a meaningful time and in a meaningful manner.[11] *Anthony*, 209 S.W.3d at 306–07.[12] The record establishes that Sanderson had notice since 2007 that his appearance on UNT campus could result in an arrest for trespass. He was informed that the trespass warning could "be appealed by submitting a letter to the University Police Department requesting a review of this action."[13] Had he taken advantage of the process afforded by UNT at any time prior to 2011, there is a possibility that his trespass warning might have been reviewed by a neutral and detached magistrate. Because he did not pursue the opportunity to be heard on a review of that warning, he has failed to show that a meaningful review of it was not available to him.

---

[11]In circumstances such as the one before us, the due-process requirement can be met where there is "notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity" to be heard after the alleged deprivation. *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976) (finding administrative review following termination of disability benefits afforded sufficient procedural due process) (discussing *Arnett v. Kennedy*, 416 U.S. 134, 142–46 (1974)).

[12]"[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

[13]This statement does not mean that the UNT Police Department would conduct the review of the action. Sanderson's assertion is that he would be denied review by a neutral magistrate. Such a statement is mere speculation, unsupported by the record.

Sanderson maintains that the rules are unconstitutional as applied to his circumstance. It is Sanderson's burden to meet the requirements of his challenge and rebut the presumption of validity. Based on this record, we find that Sanderson cannot argue that he was deprived of procedural due process when he failed to take advantage of the process afforded to him to appeal the trespass warning.[14] *See State v. Barnes*, 220 P.3d 1195, 1197 (Or. Ct. App. 2009).

## C. The Trial Court Properly Denied the Request for an Instructed Verdict

Typically, we review a challenge to the denial of a motion for instructed verdict as a challenge to the legal sufficiency of the evidence. We examine the evidence in the light most favorable to the verdict and determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

However, the motion for instructed verdict contains no contention that the proof submitted by the State was insufficient to establish criminal trespass. Sanderson's motion for an instructed verdict was "based upon the grounds in [his] motion to dismiss." Our review of his briefing confirms that Sanderson seeks only to reiterate due-process arguments which we have rejected in this opinion. Likewise, we overrule this point of error.

---

[14]Typically, we determine what process is due using "a flexible standard that depends on the practical requirements of the circumstances." *Anthony*, 209 S.W.3d at 307.

> "This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995)); *Mathews*, 424 U.S. at 335.

12

### III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    November 20, 2013
Date Decided:      December 4, 2013

Do Not Publish