# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30182

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2015

Lyle W. Cayce
Clerk

CAROL J. VINCENT,

Plaintiff–Appellee,

versus

CITY OF SULPHUR; LEWIS COATS;
CHESTER GREMILLION; GLENN MARTIN,

Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

After an altercation at a bank during which Carol Vincent allegedly threatened violence against the mayor of Sulphur, Louisiana, and a city council member, police issued an "Official Notification of Trespass Warning" prohibiting Vincent from entering city-owned property, including City Hall. After the district attorney determined that the allegations did not support prosecution,

No. 15-30182

police lifted the order.  Claiming civil-rights violations, Vincent sued Sulphur Police Chief Lewis Coats, Officers Chester Gremillion and Glenn Martin, and the city under 42 U.S.C. § 1983.

Defendants moved for summary judgment on all claims, asserting qualified immunity. The district court held that the officers were entitled to qualified immunity as to the majority of Vincent's claims.  The court denied qualified immunity, however, on Vincent's procedural-due-process and direct-municipal-liability claims, concluding that issuance of the no-trespass order without notice and an opportunity to be heard violated *Mathews v. Eldridge*, 424 U.S. 319 (1976), and its progeny and that the pertinent law was clearly established at the time of the incident. Defendants appeal the denial of qualified immunity.  Because we agree with them that the law was not clearly established, we reverse and remand.

I.

On August 7, 2012, Vincent went to a bank to discuss a financial matter on a friend's behalf.  The meeting became acrimonious, and Vincent left.  Later that day, the Sulphur Police Department received information that, in the course of the argument, Vincent had threatened to get a gun and kill Mayor Christopher Duncan and City Councilman Mike Koonce.  Because that alleged incident occurred outside the city limits, the information was referred to the sheriff's department for investigation. The next day, a sheriff's detective called Vincent and requested that he come to the station for questioning; Vincent complied. The detective interrogated him and specifically asked whether Vincent had threatened to kill the two city officials, which Vincent denied.

Two days later, Gremillion pulled Vincent's car over, explaining that he was being stopped to inform him that a no-trespass order had been issued and that he was prohibited from entering onto certain city property. Vincent

2

specifically indicated that the ban, as he understood it, encompassed "'city hall,' 'old city hall,' 'city council chambers/building,' 'city of sulphur city council meetings,' 'city of Sulphur police station,' 'city of sulphur court house,' 'city of Sulphur business center across from the new city hall,' 'West Calcasieu business center,' and 'ward 4 marshal's office'" but excluded "public thoroughfares and right-of-ways."

In early September, Vincent wrote Coats inquiring why the no-trespass order had been issued. Coats tried to respond by phone but did not reach Vincent and left a message. Vincent did not call back but on September 27 requested a written answer from Coats, who responded on October 4, indicating that the order was to prevent Vincent from coming into contact with the two individuals that he had allegedly threatened. Vincent answered by letter of October 11 requesting a meeting at a "neutral" location (so as not to violate the order by entering the police station).

At about the same time, Coats followed up with the district attorney's office regarding its investigation of the August 7 incident. That office indicated in response that it had not found sufficient evidence to prosecute. After consultation with the mayor, Coats decided to terminate the no-trespass order and notified Vincent of that by letter on October 16.

## II.

Vincent sued *pro se*, alleging violations of his rights under the Privileges and Immunities Clause of Article IV and the First, Fourth, and Fourteenth Amendments. Defendants moved for summary judgment, asserting qualified immunity. The district court addressed the motion for summary judgment in two stages—in an initial ruling, it granted the motion on the substantive-due-process, equal-protection, Fourth Amendment, and right-to-travel claims and

No. 15-30182

denied summary judgment as to Vincent's procedural-due-process claims,[1] identifying what it deemed to be clearly established law prohibiting state officials from banning individuals from public areas without notice and an opportunity to be heard. The court also stayed the First Amendment claims for additional briefing. In a later ruling, it disposed of the remaining summary judgment issue, granting qualified immunity on the First Amendment claims.

After the court had finally disposed of all issues arising from the motion for summary judgment, defendants filed what they styled a second motion for summary judgment on the procedural-due-process issue, contending that the individual defendants were entitled to qualified immunity and that the claims against the city were barred by that immunity. Treating that as a motion to reconsider, the court rejected both arguments; the defendants appealed.

## III.

### A.

We have jurisdiction over this denial of qualified immunity because such an order is immediately appealable to the extent that the appeal turns on an issue of law. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). Vincent suggests that we lack jurisdiction because the individual officers' qualified-immunity argument was initially rejected, as to the due-process claims, in the district court's May 15, 2014, Order and Memorandum Ruling, and the officers did not appeal until February 27, 2015—more than the thirty days allotted under Rule 4 of the Federal Rules of Appellate Procedure. Vincent reasons that the appeal is thus untimely. But the May 15 order ruled only on certain summary judgment items; it stayed final disposition of other issues

---

[1] The district court denied summary judgment on the procedural-due-process claims against the individual defendants and against the city. This appeal, however, is only on behalf of the officers.

No. 15-30182

to receive additional briefing. The court did not finally determine qualified immunity until October 21, 2014, when it resolved the remaining immunity issues and ordered that the matter proceed to trial on the claims as to which qualified immunity had been denied. On November 4, 2014, the officers filed a renewed motion urging summary judgment on the procedural-due-process issues; on January 29, 2015, the court, treating the motion as one for reconsideration, denied it.

The appeal is therefore timely. The May 15 order was interlocutory, because it did not dispose of all pending qualified-immunity issues presented in the motion for summary judgment but rather stayed final resolution of the motion for further briefing. The denial of summary judgment on qualified-immunity grounds did not become final until the October 21 order, which disposed of the pending qualified-immunity issue; that was the point at which the court conclusively determined the officers' entitlement *vel non* to immunity and sent the case to trial. Therefore, that is the date from which the relevant time to take an appeal should be calculated. The November 4 motion urging the court to revisit the procedural-due-process claims was timely under the 28-day limit of Federal Rule of Civil Procedure 59(e)[2] and was sufficient to toll the 30-day clock for an appeal from the October 21 order.[3] The officers filed a notice of appeal within 30 days of the denial of the second motion, rendering this appeal timely. *See* FED. R. APP. P. 4(a)(1)(A).

B.

The plaintiff has the burden of demonstrating that the defendant official

---

[2] *See Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) (treating a motion for reconsideration of a denial of qualified immunity as a Rule 59(e) motion for timeliness purposes).

[3] *See Charles L.M. v. Ne. Indep. Sch. Dist.*, 884 F.2d 869, 869 (5th Cir. 1989) (holding that a timely filed Rule 59(e) motion tolls the time for an appeal).

No. 15-30182

is not entitled to qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This demands a two-step analysis: whether a constitutional right was violated and whether the allegedly violated right was "clearly established." *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir. 2002) (en banc) (per curiam). This court has discretion to perform either prong first.

To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law. *See id.* at 323. This is a demanding standard: Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), we do not deny its protection unless existing precedent places the constitutional question "beyond debate," *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). The court must "ask whether the law so clearly and unambiguously prohibited [the official's] conduct that *every* reasonable official would understand that what he is doing violates [the law]." *Id.* (citing *al-Kidd*, 131 S. Ct. at 2083) (second alteration in original).

Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. *See id.* at 372. Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right "clearly" in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case. *See Brosseau v. Haugen*, 543 U.S. 194, 198

No. 15-30182

(2004). Therefore, we must decide whether the cases cited by the district court place beyond reasonable debate the proposition that a person under criminal investigation for threatening to kill city officials has a procedural-due-process right under *Eldridge* to receive notice and an opportunity to be heard before a ban on entering city buildings goes into effect.

IV.

The district court found that, on the facts as viewed most favorably to Vincent, Vincent's procedural-due-process rights were violated when the officers issued the no-trespass warning without providing him with notice and an opportunity to be heard. The court reasoned that the no-trespass order violated Vincent's constitutionally protected right to go to or remain in public places of his choosing and was issued without process sufficient to satisfy *Eldridge*'s familiar three-factor balancing test.[4] It then determined, on a review of the cases discussing the liberty interest in being free to move about in public, that the right Vincent asserted was clearly established. Specifically, the court relied on *City of Chicago v. Morales*, 527 U.S. 41 (1999); *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Shuttlesworth v. City of Birmingham*, 382 U.S. 87 (1965); *Kent v. Dulles*, 357 U.S. 116 (1958); *Williams v. Fears,* 179 U.S. 270 (1900); *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011); and *Anthony v. State,* 209 S.W.3d 296 (Tex. App.—Texarkana 2006, no pet.), for the proposition that policies giving unbridled discretion to police officers to issue trespass warnings to those in public parks, on sidewalks, and the like violate procedural-due-process rights. Finally, the district court cited *Kennedy*

---

[4] Under *Eldridge*, the court is to balance "(1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and (3) the interest that the government seeks to achieve." *Sys. Contrs. Corp. v. Orleans Parish Sch. Bd.*, 148 F.3d 571, 575 (5th Cir. 1998) (citing *Eldridge*, 424 U.S. at 335).

No. 15-30182

*v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010), which held specifically that an individual's right lawfully to remain in a public place was clearly established for purposes of qualified immunity. *Id.* at 337–38 (relying on *Fears*, *Papachristou*, *Kent*, and *Morales*).

The cited cases, however, do not reflect clearly established law in this circuit under these facts.[5] Although the Supreme Court decisions amply support the proposition that there is a general right to go to or remain on public property for lawful purposes, none comes near the level of specificity needed to put "beyond debate" the related but distinct proposition that a person under investigation for threatening deadly violence against city officials has a right to notice and a hearing before being banned from entering city buildings.[6] None of the Supreme Court cases mirrors the facts or the district court's legal reasoning—in fact, none of them addresses an *Eldridge*-type procedural-due-process claim at all.

The cases from the Sixth and Eleventh Circuits and the Texas intermediate court come somewhat closer—they at least address procedural-due-process claims in the context of the right to enter or remain on government property. But two out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly

---

[5] Because the purported procedural-due-process right at issue was not clearly established, we need not reach the question whether such a right was violated.

[6] In his brief, Vincent claims he did not in fact make the threats and, further, that the police did not have credible evidence that he made them. But Coats's affidavit states—and Vincent does not dispute—that the police department did in fact receive information that Vincent had made the threat. Coats additionally states the undisputed fact that the police department referred the matter to the sheriff's department, which, in conjunction with the district attorney's office, did not resolve the matter until sometime after October 11. The officers have therefore established that their actions did occur in the context of an ongoing investigation into Vincent's conduct. On a motion for summary judgment, Vincent's assertions to the contrary are not sufficient.

established law sufficient to defeat qualified immunity in this circuit. A review of the decisions on which the district court relied demonstrates their insufficiency for a "clearly established" finding.

We begin with the Supreme Court cases, because to the extent any of those is on point, the officers were fairly on notice under controlling authority. The district court relied heavily on *Morales*, which it characterized as holding that a local anti-loitering ordinance violated the Due Process Clause. That description of the holding is generally correct. But the Court did not find a Due Process Clause violation under the *Eldridge* procedural-due-process doctrine—indeed, the decision does not cite *Eldridge* or seek to determine whether notice and an opportunity to be heard were due before anti-loitering orders issued.

*Morales* instead turned on the determination that the ordinance was unconstitutionally vague because it violated the requirement that criminal statutes provide minimum guidelines for enforcement. *Id.* at 60. That is not the sort of procedural-due-process claim that is made here, where the issue is whether Vincent was entitled to notice and an opportunity to be heard; *Morales* has nothing to say to that question. The district court also excerpted a lengthy quotation to the effect that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 53 (plurality opinion). But the section of the opinion from which that language is drawn commanded only three votes, and the court was not performing a due-process analysis but rather an overbreadth inquiry when it asserted the existence of that right. *See Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012). And indeed, in discussing a procedural-due-process claim regarding a right to enter onto public property, the Seventh Circuit sharply distinguished this language in *Morales* on that

basis and noted that even to the extent the citation at issue would support "some liberty interest in the right to loiter, it would not follow that this right confers unfettered access to all public places." *Id.* The Seventh Circuit's observation is a strong indication that the language in *Morales* on which the district court depended cannot serve as notice to a reasonable officer that there was a clearly established procedural-due-process right in this context.

The district court's citations to *Papachristou* and *Shuttlesworth* are similarly unpersuasive as to the existence of a clearly established procedural-due-process right to notice and a hearing. *Papachristou* found an anti-vagrancy ordinance unconstitutionally vague. *Papachristou*, 405 U.S. at 162. *Shuttlesworth*, 382 U.S. at 90–91, similarly struck down as impermissibly vague an anti-loitering ordinance. Neither of those vagueness decisions purports to address the procedural-due-process right to notice and a hearing.

Nor does *Morales*, *Papachristou*, or *Shuttlesworth* bear sufficient factual similarity to the conduct here to serve as evidence of a clearly established rule. None involved similar facts: a no-trespass warning covering city administrative buildings issued as a prophylactic security measure for the duration of a live investigation of alleged threats on the lives of city officials. In *Papachristou*, the various individual defendants appear to have been arrested following chance encounters with the police, before which they had been going about their business as usual. *Shuttlesworth* involved the arrest of an individual for standing peacefully on a city sidewalk after an officer instructed him to move along. And although *Morales* does not even recite the facts giving rise to the litigation there, the challenged ordinance gave officers essentially unfettered discretion to order any group of individuals to disperse if a single member of the group was, to the officer's knowledge, a gang member.

The other two Supreme Court cases that the district court cited—*Kent*

and *Williams*—are even further afield. *Kent* concerned the State Department's denial of passports to two persons for being communists. The Court did not, however, reach any constitutional question, because it resolved the matter by finding that the Secretary of State was not authorized by statute to deny passports on the basis of political affiliation. *Kent*, 357 U.S. at 129–30. And *Williams* concerned the validity of a state occupational tax levied on individuals who served as agents to hire laborers in one state to work in another. *Williams*, 179 U.S. at 274. It is true that, like *Morales*, both decisions include strong language in favor of a generalized right to go about as one pleases in the pursuit of one's lawful business. But neither is addressed to facts remotely similar to those here, and therefore they cannot be said to put a reasonable officer on fair warning that his conduct was unlawful under the instant facts.

The district court also relied on three out-of-jurisdiction lower-court decisions to support its conclusion that the procedural-due-process right was clearly established. Unlike the Supreme Court cases cited above, those three cases—two from our sister circuits and one from an intermediate Texas state court—do deal specifically with procedural due process in the context of the right to go about lawfully in public areas. And *Kennedy*, 595 F.3d at 337–38, even goes so far as to find that a procedural-due-process right in this context is clearly established. But those decisions, taken together, cannot support a finding of a clearly established right here.

First, two cases from other circuits and one from a staye intermediate court do not, generally speaking, constitute persuasive authority defining the asserted right at the high degree of particularity that is necessary for a rule to be clearly established despite a lack of controlling authority. In any event, those three cases address matters that are sufficiently legally or factually distinguishable as to make a finding of clearly established law improper.

11

The district court relied most heavily on *Kennedy*, which concerned a no-trespass order issued to an individual suspected of engaging in inappropriate "child-watching" at a public pool. The pool manager called police, who questioned the person for fifteen minutes before they determined that there was no basis for reasonable suspicion to continue questioning or to believe that a crime had been or would be committed. Nonetheless, at the manager's request, the officer issued a no-trespass order prohibiting the individual from entering onto any property owned by the Cincinnati Recreation Commission. That person sued, and the Sixth Circuit held that the defendant officer was not entitled to qualified immunity on a procedural-due-process claim alleging a deprivation of the liberty interest in entering onto public property. *Id.* 335–38. The court determined that, on the basis of the Supreme Court decisions discussed above, there was a clearly established liberty interest in going to and remaining in public places and that the officer's actions in "depriving him of [that] interest, without procedural due process, constituted a violation of a clearly established constitutional right." *Id.* at 338.

For two reasons, *Kennedy* is not incompatible with qualified immunity in the instant case. First, *Kennedy* is factually distinguishable: It was undisputed that when the officer issued the no-trespass warning, he had already concluded that there was no basis for reasonable suspicion that the individual had committed or would commit a crime. Not so here, where the no-trespass order was issued at the outset and terminated at the close of an investigation of Vincent's alleged threats of deadly violence.

Second, *Kennedy* does not reach the critical question for an *Eldridge* procedural-due-process claim. The *Kennedy* court instead determined only that *the liberty interest itself* was clearly established and then asserted that a deprivation of that liberty interest "without procedural due process" was a

violation of a clearly established constitutional right. *Id.* at 337–38. But that is tautological: It is necessarily unconstitutional to deprive an individual of a recognized liberty interest "without procedural due process." The *Kennedy* court never asked the question that such a statement begs, which is what procedure was due. More specifically, it never considered whether the *Eldridge* balancing test dictated that the person was entitled to notice and a hearing before he was deprived of his liberty interest in entry into public recreational facilities.

The district court's brief references to *Catron* and *Anthony* are similarly unavailing. Though both conducted the full *Eldridge* balancing test in deciding that issuing a no-trespass order without notice and a hearing was unconstitutional, *see Catron*, 658 F.3d at 1266–69; *Anthony*, 209 S.W.3d at 306–08, both are distinguishable.

*Catron* involved no-trespass warnings prohibiting homeless individuals from entering onto public parks and similar property; it therefore addressed a dramatically different set of asserted state interests in the *Eldridge* due-process balancing test. *See Catron*, 658 F.3d at 1264, 1267. The defendant in *Anthony* (a criminal case in which the procedural-due-process argument was raised as a defense) was arrested for violating a criminal-trespass warning that had issued in the immediate wake of a minor verbal altercation. *See Anthony*, 209 S.W.3d at 302. Neither case involved the sort of government security interests at issue here, nor were the individuals who sued or defended on the ground that the no-trespass warning was unlawful the subject of specific, individualized suspicion of future violence directed at identifiable persons when the warning was issued. Therefore, it is untenable to read these decisions as clearly establishing, such that any reasonable officer would be aware, the entitlement of a person in Vincent's position to notice and a hearing before

No. 15-30182

issuance of a no-trespass order designed to keep him from coming into contact with the targets of alleged threats.

## V.

In summary, as we have explained, the alleged constitutional right was not clearly established, so the officers are entitled to qualified immunity. We need not reach the question whether the officers in fact committed a procedural-due-process violation.  We therefore REVERSE the order denying summary judgment and REMAND for further proceedings as needed.