# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2022

Lyle W. Cayce
Clerk

No. 21-30129

CRYSTAL STOKES; LENNON BETANCOURT,

*Plaintiffs—Appellants*,

*versus*

BILLY MATRANGA; DAVID MALVEAUX; JOSEPH P. LOPINTO, IN HIS OFFICIAL CAPACITY AS JEFFERSON PARISH SHERIFF,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-1642

Before JONES, HIGGINSON, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Sergeant Billy Matranga arrested Lennon Betancourt after photographs surfaced on social media showing Betancourt posing with a caricature of himself labeled "Future School Shooter." Crystal Stokes, Betancourt's mother, sued Sergeant Matranga on Betancourt's behalf under

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-30129

42 U.S.C. § 1983 for arresting him without probable cause. The district court granted summary judgment for Sergeant Matranga on various grounds, including that he is entitled to qualified immunity. For the following reasons, we AFFIRM.

## Background

Sergeant Billy Matranga worked as the campus police officer for Grace King High School. On the morning of February 22, 2018, the school principal called Sergeant Matranga to her office and showed him photographs of Lennon Betancourt posing with a caricature of himself drawn on a whiteboard with the words "Future School Shooter" written above it. The principal also told Sergeant Matranga that someone had posted the photograph on social media. Unsurprisingly, the photograph sparked concern in the community and many parents called the school about taking their kids out of school. Moreover, at some point, the media developed interest in the photographs.

Another school administrator had summoned Betancourt to the principal's office. Shortly after conferring with the principal, Sergeant Matranga restrained Betancourt with handcuffs and took him to the police station to interview him about the photographs. Sergeant Matranga placed Betancourt in a holding cell while another officer contacted Betancourt's mother, Crystal Stokes. With Stokes present, Sergeant Matranga questioned Betancourt about the photographs.

During the interview, Betancourt told Sergeant Matranga about the circumstances behind the photograph. The day before, Betancourt's health teacher had led a discussion about a series of school shootings. At one point, the teacher told students that the stereotypical school shooter was a white male. Other students started making jokes about Betancourt being the only student in the class that fit the teacher's description. For example, some

No. 21-30129

students, in jest, asked Betancourt to spare them from being shot. Another student went to the front of the classroom and sketched a caricature of Betancourt on the whiteboard and wrote the words "Future School Shooter" above it. Acquiescing in the other students' jokes, Betancourt went around the room giving fist bumps to students in response to their pretend pleas to spare them and also posed for a photograph with the caricature. Sergeant Matranga also interviewed the student that drew the caricature and that student largely confirmed Betancourt's description of what happened.

Notwithstanding Betancourt's explanation, Sergeant Matranga formally arrested Betancourt for violating Louisiana's criminal terrorizing statute.[1] Sergeant Matranga then transported Betancourt to a juvenile detention facility, where Betancourt spent the night. In the report describing the reasons for arresting Betancourt, Sergeant Matranga noted that Betancourt had given "a voluntary statement with his mother's presence admitting to knowing he was being photographed and posted to social media, creating terror in the school, students, faculty, staff and parents."

The next day, the juvenile court released Betancourt, but only on the condition that he remain in his home and wear an electronic ankle bracelet monitoring device. The district attorney filed a petition in juvenile court charging Betancourt with committing the crime of terrorizing, but it was later dismissed.

---

[1] La. R.S. § 14:10.1 ("Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.").

No. 21-30129

Stokes, on Betancourt's behalf, brought this lawsuit raising claims under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as a host of state law claims, against a variety of defendants.[2]  During the course of litigation, Stokes settled all claims except those against Sergeant Matranga, his supervisor, and his employer.

At the summary judgment stage, the district court dismissed all remaining claims.  Regarding the Fourth Amendment claim against Sergeant Matranga, the district court concluded that Sergeant Matranga had probable cause for both arrests and that, even so, he is entitled to qualified immunity.  As to the malicious prosecution claim against Sergeant Matranga, the district court concluded that Betancourt could not show any malice on Sergeant Matranga's part and that, as a result, the claim failed.  Betancourt appealed, challenging the district court's order only insofar as it granted summary judgment on the claims against Sergeant Matranga.

## Standard of Review

This court reviews the district court's decision to grant summary judgment de novo.  *Hyatt v. Thomas*, 843 F.3d 172, 176-77 (5th Cir. 2016) (citation omitted).  A court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  In determining

---

[2] After Betancourt turned eighteen, he formally joined this lawsuit as a co-plaintiff to pursue his own claims.  As a result, Stokes likely does not retain any independent interest in the litigation.

whether a genuine dispute of material fact exists, the court views "all facts and evidence in the light most favorable to [the nonmovant] and draw[s] all reasonable inferences in [the nonmovant's] favor." *Voss v. Goode*, 954 F.3d 234, 237 (5th Cir. 2020) (citation omitted).

## DISCUSSION

On appeal, Betancourt advances two arguments.[3] First, he argues that Sergeant Matranga violated his Fourth Amendment rights by twice arresting him without probable cause.[4] Second, he argues that Sergeant Matranga is not entitled to qualified immunity. We need not determine whether Sergeant Matranga had probable cause to arrest Betancourt because we conclude that Sergeant Matranga is nevertheless entitled to qualified immunity.

To overcome Sergeant Matranga's qualified immunity defense, Betancourt must show that Sergeant Matranga's conduct (1) violated a constitutional right and (2) that "the right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (quotation omitted). Courts may address either prong in the qualified immunity analysis or both. *Id.* at 236. Here, we conclude that Sergeant Matranga is entitled to qualified immunity because his actions did not violate "clearly established" law.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[A]rrests are 'seizures' of

---

[3] Betancourt also appears to argue that the district court erred in dismissing his malicious prosecution claim, but he does not explain his position and does not cite a single legal authority. Thus, that argument is waived for inadequate briefing. FED. R. APP. P. 28(a)(8)(A); *United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009).

[4] The court assumes, without deciding, that Sergeant Matranga did in fact "arrest" Betancourt when Sergeant Matranga restrained him and took him to the police station.

'persons'" and, therefore, "must be reasonable under the circumstances" to comply with the Fourth Amendment. *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 585 (2018). A warrantless arrest is reasonable if the officer has "probable cause to believe that a criminal offense has been . . . committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004) (citations omitted).

Even if an officer makes a warrantless arrest without probable cause, qualified immunity immunizes the officer from suit unless that "officer had fair notice that [his] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (per curiam). "Fair notice requires clearly established law." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020). The plaintiff must show that the law is so clearly established that "every reasonable official" in defendant-official's shoes would know not to engage in the complained-of conduct. *Wesby*, 138 S. Ct. at 590. To do that here, Betancourt needs to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment" by arresting someone without probable cause. *Id.* at 590 (quotation omitted).

Betancourt has not shown that Sergeant Matranga violated clearly established law. Louisiana's Terrorizing statute prohibits the (1) "intentional communication" of (2) "information that the commission of a crime of violence is imminent" with the (3) "intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building . . . ; or causing other serious disruption to the general public." La. R.S. § 14:10.1. At the time of the first arrest, Sergeant Matranga had seen a photo of Betancourt posing next to a caricature of himself labeled "Future School Shooter." Sergeant Matranga also knew that someone had posted the photo to social media and that parents of other students had called the school to express concerns or to ask about taking their kids out of school. Even assuming that Sergeant Matranga lacked actual

probable cause, the court cannot conclude that *every* reasonable officer in his shoes would know that arresting Betancourt based on that information would violate the Fourth Amendment.

So, too, with the second arrest. At that time, Sergeant Matranga had interviewed both Betancourt and the student who drew the caricature. In his interview, Betancourt told Sergeant Matranga about the circumstances of the photo and insisted that it was all just a joke. Betancourt argues that Sergeant Matranga had no evidence of criminal intent and therefore lacked probable cause. But even so, the court cannot conclude that *every* reasonable officer with that information would so conclude.

More importantly, Betancourt does not even attempt to identify a single case where a court found that an officer violated the Fourth Amendment in similar circumstances. Nor has this court's research revealed any such case. It is not enough to merely invoke the general prohibition on arrests without probable cause.[5] *See Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) ("Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether

---

[5] The dissent attempts to identify relevant "clearly established" law in *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988), and *Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017), two cases Betancourt's brief does not even cite. From those cases, the dissent extracts the principle that an officer "may not disregard facts tending to dissipate probable cause." *Bigford*, 834 F.2d at 1218. But neither case bears any resemblance to the circumstances Sergeant Matranga faced here. Thus, in relying on those cases to support its conclusion that Sergeant Matranga violated "clearly established" law, the dissent disregards the Supreme Court's repeated and unequivocal admonition that to show a violation of "clearly established" law requires "identify[ing] a case where an officer *acting under similar circumstances . . .* was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (emphasis added); *see also Wesby*, 138 S. Ct. at 590 (invoking the same principle in case involving allegation that officer arrested person without probable cause).

No. 21-30129

a right is clearly established as to the specific facts of the case.") (citation omitted).  Thus, Betancourt has not satisfied his burden to overcome the qualified immunity defense.  We AFFIRM.

No. 21-30129

STUART KYLE DUNCAN, *Circuit Judge*, dissenting:

I respectfully dissent. No reasonable officer, knowing what Sergeant Matranga knew, would have thought Lennon Betancourt was guilty of anything. Lennon's arrest was based on an obviously satiric photo (1) that Lennon didn't take, (2) that Lennon didn't post online, and (3) that grew out of a classroom prank Lennon's own teacher was in on. Matranga knew all that—and yet he arrested Lennon, clapped him in jail, and misled the district attorney into charging him with "terrorizing," a crime punishable by a $15,000 fine and 15 years in prison. Before these absurd charges were dropped, Lennon's mother had to hire a lawyer and Lennon was expelled from school. Qualified immunity does not protect the officer who orchestrated this outrageous clown show.

I.

Probable cause to arrest[1] turns on what the officer knew. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). At first, Matranga knew only that parents were concerned about these online photos:



---

[1] The majority does not address whether Matranga had probable cause to arrest Lennon because it agrees with the district court that neither arrest was objectively unreasonable under clearly established law. *See ante* at 7.

Lennon stands beside a drawing labeled "Future School Shooter." Scrawled nearby are some math problems and the mysterious couplet, "Drugs are my Chicken / Chicken is my Drug." At this point, Matranga "had nothing more than a photograph" and "did not know who drew the picture, who labeled it, who posted the photographs on social media, or what Lennon meant to communicate by the pictures, if anything." *Stokes v. Faber*, 522 F. Supp. 3d 225, 235 (E.D. La. 2021). No matter. Matranga handcuffed Lennon, put him in the back of a patrol car, and drove him to the police station.

There, Lennon and another student, Wesley Marino, told Matranga the incident was a "joke." Their teacher, Guy Farber, had remarked that the "typical" school shooter was a "white male." Tasteless hilarity ensued because Lennon was the only white male in class. Students begged Lennon to "spare them," and he promised he would. Wesley then drew the caricature and labeled it "Future School Shooter." When students urged Lennon to pose for a photo, Farber told Lennon to "get it over with." Although Lennon didn't take the photos or post them, he told Matranga he knew they'd be put online.

Instead of investigating further (say, by interviewing the teacher), Matranga arrested Lennon for "terrorizing":

> Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.

La. Rev. Stat. § 14.40.1(A). Matranga also wrote a highly abridged account of the incident in his probable cause report:

No. 21-30129

**REMARKS**
ON 2-22-18 AT APPROXIMATELY 0730 I WAS INFORMED ABOUT A SOCIAL MEDIA POST THAT DEPICTED A DRAWING OF ARRESTEE WITH THE WORDS "FUTURE SCHOOL SHOOTER" WRITTEN ON TOP. DURING THE INVESTIGATON I · OBTAINED COPYS OF THE PICTURE POSTED TO SOCIAL MEDIA. DEPICTING ARRESTEE POSING WITH THE DRAWING. IT SHOULD BE NOTED THAT ARRESTEE WAS AWARE WHILE POSING PICTURES WERE TAKEN TO BE POSTED. AT APPROXIMATELY 1022 ARRESTEE GAVE OFFICER A VOLUNTARY STATEMENT WITH HIS MOTHER'S PRESENCE ADMITTING TO KNOWING HE WAS BEING PHOTOGRAPHED AND POSTED TO SOCIAL MEDIA, CREATING TERROR IN THE SCHOOL, STUDENTS, FACULTY, STAFF AND PARENTS.

After spending the night in jail, Lennon was brought to juvenile court. He was released under house arrest and made to wear an electronic ankle bracelet. Based on Matranga's report, the district attorney charged Lennon with terrorizing. His mother hired a lawyer. Lennon was suspended from school and then expelled. A month later, the charges were dropped.

Matranga never had probable cause to arrest Lennon for terrorizing. "Probable cause [for a warrantless arrest] exists when all of the facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018) (citation and internal quotation marks omitted). Before the first arrest, Matranga knew only that the photo was online. Maybe that gave Matranga reason to question Lennon. But arrest him for *terrorizing*? That offense requires (1) the "intentional communication" (2) "of information that the commission of a crime of violence is imminent or in progress," (3) "with the intent" of causing public fear or disruption. LA. REV. STAT. § 14.40.1(A).

Matranga knew nothing to suggest Lennon had committed that crime. He didn't know who took the photo, who posted it, nor the first thing about why it was taken. So, he had no basis to believe *Lennon* had "intentionally

communicat[ed]" anything. *Ibid.*[2] And consider the photo's content—Lennon in a classroom standing beside a caricature labeled "Future School Shooter" next to math problems and "Drugs are my Chicken / Chicken is my Drug." Does that tableau of absurdity suggest "the commission of a crime of violence [was] imminent or in progress"? *Ibid.*[3] Does it show "intent of causing members of the general public to be in sustained fear for their safety"? *Ibid.*[4] No and no.

Probable cause for the second arrest is even weaker because officers "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir. 1988). After interviewing Lennon and Wesley, Matranga learned: (1) Lennon didn't draw or label the caricature; (2) Lennon didn't post the photo, but only knew someone might; (3) the photo arose out of a class joke fomented by other students; and (4) Lennon's teacher encouraged him to pose for the photo. These facts dissolved any notion that Lennon had committed terrorizing. They confirmed that Lennon did nothing but pose for the photo; that no violence, imminent or otherwise, was being communicated; and that the whole thing was a joke in which no one had the "specific intent . . . to cause members of the general public to be in sustained fear for their safety." *State v. Lewis*, 2009-783 (La. App. 5 Cir. 5/28/10), 43 So.3d 973, 984.

---

[2] *Cf. State v. Jason*, 2008-1319 (La. App. 3 Cir. 5/6/09), 9 So. 3d 336, 340 (sufficient evidence of "intentional communication" under § 14.40.1 where defendant "ma[de] loud verbal threats and . . . scream[ed] and holler[ed] at several individuals").

[3] *Cf. State ex rel. RT*, 2000-0205 (La. 2/21/02), 781 So.2d 1239, 1242 (student's "discussion of hypothetical conduct" in describing a shooting scenario to classmate failed the imminence prong, which "is clearly an essential element of this part of the statute").

[4] *Cf. State v. Lewis*, 2009-783 (La. App. 5 Cir. 5/28/10), 43 So.3d 973, 985 (explaining that § 14.40.1 "requires specific intent, because the statutory definition of the crime of terrorizing includes the intent to accomplish a particular consequence").

No. 21-30129

But maybe Matranga is saved by the "independent intermediary" doctrine. "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citation omitted). Can Matranga use this escape hatch? I think not. The doctrine doesn't apply "if . . . the deliberations of the intermediary were in some way tainted by the actions of the defendant." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *McLin*, 866 F.3d at 689). Here, the district attorney's decision to charge Lennon was "tainted" by Matranga's report, which omitted the glaring fact that the photo arose from a class joke egged on by the teacher.[5] What's more, the report falsely implied that Lennon admitted to the crime:

> Arrestee gave officer a voluntary statement with [sic] his mother's presence admitting to knowing he was being photographed and posted to social media, creating terror in the school, students, faculty, staff and parents.

The clumsy phrasing suggests Lennon "admitt[ed] to knowing" the posting would "creat[e] terror." But Lennon never did anything of the sort.[6]

In sum, Matranga lacked probable cause to arrest Lennon for terrorizing.

---

[5] *Winfrey v. Rogers*, 901 F.3d 483, 497 (5th Cir. 2018) (where, "at best, it is not clear whether all the facts [were] presented to the grand jury, we [have held] that the independent-intermediary doctrine does not apply" (citation and internal quotation marks omitted); *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) ("If the facts omitted from an affidavit are 'clearly critical' to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself.") (citation omitted).

[6] *See Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior.").

No. 21-30129

II.

Matranga would still enjoy qualified immunity, though, if he "reasonably but mistakenly" thought he had probable cause. *Sam*, 887 F.3d at 715 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018)). His conduct must be measured by "the state of the law at the time of the incident." *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir.), *cert denied*, 141 S. Ct. 662 (2020). While a directly-on-point case isn't necessary to find Matranga acted unreasonably, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ibid.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). The pertinent rule must be "well defined," must make it "clear to a reasonable officer that his conduct was unlawful in the situation he confronted," and must not be defined "at a high level of generality." *Wesby*, 138 S. Ct. at 590 (citations omitted).

The majority concludes neither arrest was objectively unreasonable. *Ante* at 7. Regrettably, I must part ways as to the second arrest—the one after Matranga interviewed Lennon. It is "axiomatic" that "officers must know the factual predicate for probable cause prior to arrest." *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009) (citing *Sibron v. New York*, 392 U.S. 40, 62–63 (1968); *Henry v. United States*, 361 U.S. 98, 102 (1959)).[7] As discussed, initially Matranga knew only that someone had posted a satiric photo labeled "Future School Shooter." Even assuming that justified the

---

[7] *See also Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (probable cause existed at the moment of arrest when officers "possessed trustworthy information" sufficient to warrant a prudent man in believing the arrestee had violated the underlying statute); *Beck v. Ohio*, 379 U.S. 89, 93–95 (1964) (finding no probable cause when the record showed only a photo and "[did] not contain a single objective fact to support a belief by the officers that the petitioner was engaged in criminal activity at the time they arrested him").

first arrest, by the time of the second arrest any basis for probable cause had evaporated. And yet Matranga bulldozed ahead and arrested Lennon *again*.

An officer violates the Fourth Amendment if he makes a warrantless arrest while knowing facts negating any possibility the arrestee committed a crime. Officers "may not disregard facts tending to dissipate probable cause." *Bigford*, 834 F.2d at 1218.[8] All officers are charged with knowing that basic principle, which is a "corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause." *Ibid.* (citations omitted). No decision by any court contradicts it. The principle is therefore "settled law" for qualified immunity purposes. *See Wesby*, 138 S. Ct. at 589–90 (rule is "settled" if established by "a robust 'consensus of cases of persuasive authority'") (citations omitted).

We recently applied this rule in *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 393–94 (5th Cir 2017). Officers arrested Davidson for making entry to an abortion clinic "impassable" or "unreasonably inconvenient or hazardous" under a Texas criminal statute. *Id.* at 392–93 (quoting TEX. PENAL CODE § 42.03). But the officers already knew that Davidson was merely stopping clinic patrons to offer them information, an action no "objectively reasonable officer" could have thought violated the statute. *Id.* at 393. We concluded the arrest "violated Davidson's clearly established

---

[8] *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists"); *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (citation omitted) ("probable cause may be defeated if the officer deliberately disregards facts known to him which establish justification"); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023–24 (9th Cir. 2009) (courts cannot ignore "facts tending to dissipate probable cause" because probable cause is a totality-of-the-circumstances determination).

rights," *inter alia*, "to be free from false arrest." *Ibid.* (quoting *Club Retro*, 568 F.3d at 206.")[9]

So too here. Given what Matranga knew before the second arrest, no "objectively reasonable officer in [his] position" could have believed Lennon had violated the terrorizing statute. *Ibid.* And, like the officers in *Davidson*, Matranga showed no familiarity with the state law supposedly justifying the arrest. *Cf. ibid.* ("A review of Texas state court decisions applying § 42.03 further supports our holding that no reasonable officer would conclude that probable cause existed to arrest Davidson."). Contrary to the district court's suggestion, *see Stokes*, 522 F. Supp. 3d at 236, our cases routinely assess probable cause to arrest by reference to state law.[10] Nothing in the statute or the caselaw justified Matranga's belief that Lennon had committed terrorizing by allowing his photo to be taken in front a caricature of himself labeled "Future School Shooter," especially after he learned about the innocuous origins of the photo.[11]

In short, no reasonable officer would have concluded there was probable cause to arrest Lennon for terrorizing or for any other crime, especially after the officer learned facts dissipating any probable cause. I

---

[9] We held the arrest "also" violated Davidson's First Amendment rights. *Id.* at 394 (citations omitted).

[10] *See Davidson*, 848 F.3d at 393 (referring to Texas decisions); *see also, e.g.*, *Voss*, 954 F.3d at 239 (judging probable cause by reference to interpretations of Texas Penal Code); *Club Retro*, 586 F.3d at 204 (judging probable cause by reference to various Louisiana statutes and Parish ordinances); *Bigford*, 834 F.3d at 1218 (judging probable cause in part by reference to meaning of Texas Certificate of Title Act).

[11] *See, e.g.*, *Lewis*, 43 So.3d at 985 ("[T]errorizing requires specific intent, because the statutory definition of the crime of terrorizing includes the intent to accomplish a particular consequence, *i.e.*, the intent to cause members of the general public to be in sustained fear for their safety, or to cause evacuation of a public building, a public structure, or a facility of transportation, or to cause other serious disruption to the general public.").

therefore respectfully dissent from the majority's holding that Sergeant Matranga is entitled to qualified immunity.