# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2024

Lyle W. Cayce
Clerk

No. 22-20482

———————

Donald Woods, *Individually and on behalf of* the estate of Danny Thomas; Marketta Chanta Thomas, *Individually and on behalf of* the estate of Danny Thomas; Naisha Bell, *As next friend of* M.K. Thomas; Diane Turner, *As next friend of* B.D. Turner; Necole West, *As next friend of* D.R. Thomas (12); Denise Matthews, *As next friend of* D.R. Thomas (3); Ronshell Hampton, *As next friend of* L.N. Hampton; Adenike Thomas, *Individually*,

*Plaintiffs—Appellants,*

*versus*

Harris County, Texas; Cameron Brewer,

*Defendants—Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1152

———————

No. 22-20482

Before JONES, BARKSDALE, and ELROD, *Circuit Judges*.

PER CURIAM:[*]

This civil-rights action arises from the fatal shooting in early 2018 of Danny Ray Thomas by Cameron Brewer, a deputy for Harris County, Texas. The district court granted summary judgment in favor of both the Deputy and the County. We AFFIRM.

I.

The record includes two video recordings, which together capture many of the events that preceded Thomas's death.

Around mid-day in March 2018, the Deputy, a black male, was driving to his assigned beat, when he stopped at a red light and noticed Thomas, a black male, standing in the intersection. Thomas's pants were down to his ankles, and the Deputy did not see a weapon on the front of Thomas's body.

The Deputy observed Thomas banging his hands on a vehicle's hood, prompting the driver to exit the vehicle and confront Thomas. Thomas approached the back-pedaling driver, who shoved Thomas as he closed the distance between them. Thomas immediately pointed at the Deputy, who had exited his vehicle, and walked quickly and directly toward the Deputy. The Deputy drew his firearm and told Thomas multiple times to stop and/or get on the ground.

Thomas continued to approach the Deputy quickly, despite his multiple orders to "get down" and warnings that he would shoot him. A bystander's cellphone video, taken from the other side of the intersection,

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

captured the next moments—the Deputy's steadily retreating into the intersection as Thomas advanced. A vehicle proceeding through the busy intersection blocked the bystander's view, causing around a five-second gap in video footage, including the moments immediately before, and when, the Deputy fired his weapon.

Twenty seconds elapsed between when the Deputy exited his vehicle and when he shot Thomas. Appellants concede that Thomas was four feet away from the Deputy when he discharged his firearm. Thomas, hit in the lower chest area, died at the scene. Thomas's autopsy's toxicology report detected phencyclidine (PCP) and substances associated with marijuana in his blood. In a sworn statement given after the shooting, the Deputy said he was afraid for his life; he "could not let [Thomas] get control of [his] weapon"; and he shot Thomas believing Thomas was experiencing "excited delirium," a condition causing "superhuman strength."

Following an investigation by the Internal Affairs Division, the Sheriff's Office determined that the Deputy had violated two of its policies, including its use-of-force policy, and terminated his employment. The Deputy was later indicted, tried, and acquitted by a jury for aggravated assault. He was also subsequently reinstated following a civil-service hearing.

Members of Thomas's family brought claims against the Deputy under 42 U.S.C. § 1983 for excessive force and under state law for wrongful death, survival, negligence, and gross negligence. They also brought claims against the County under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Americans with Disabilities Act, and the Rehabilitation Act.

The Deputy and the County each moved for summary judgment. A magistrate judge's report recommended that the district court grant both motions. It concluded that (1) the Deputy was entitled to qualified immunity

because Thomas's claimed constitutional right was not "clearly established," and (2) Appellants "ha[d] not raised a genuine issue of material fact on their claims against the County." The district court adopted the recommendation of the magistrate judge and granted summary judgment in favor of both the Deputy and the County. It also dismissed the state-law claims against the Deputy without prejudice, declining to exercise supplemental jurisdiction.

## II.

Appellants contest the district court's decision to grant summary judgment to the Deputy and the County. "We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). "A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776 (2007)). For our *de novo* review, the two videotapes are the critical summary-judgment evidence.

## A.

We first address whether the district court correctly granted summary judgment in favor of the Deputy on the basis of qualified immunity. Assertion of the qualified-immunity "defense alters the usual summary

judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (citation omitted). To apply the defense, "we engage in a two-part inquiry asking: first, whether taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional [or statutory] right; and second, whether the right was clearly established." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (first alteration in original) (citation omitted).

"A court may rest its analysis on either prong." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (*en banc*)).

We need not address whether the Deputy violated a constitutional right. Instead, we rest our analysis on the second prong.

The second prong is a "demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted). The law must "clearly and unambiguously prohibit[] [the official's] conduct [such] that *every* reasonable official would understand that what he is doing violates [the law]." *Id.* (second and fourth alteration in original) (emphasis in original) (citation omitted).

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' . . . Such specificity is especially important in the Fourth Amendment context." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015) (emphasis in

original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084 (2011)).

To show that a right is "clearly established," Appellants must show: (1) that "existing precedent . . . place[s] the . . . question beyond debate" or (2) that the violation is "obvious" under *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), and *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989). *Kisela*, 138 S. Ct. at 1152–53 ("But the general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law outside an obvious case." (citation omitted)).

1.

Appellants fall far short of placing the claimed constitutional right "beyond debate." Of the four cases they cite in support of this position, one is unpublished from this court and three are from district courts: *Hobart v. Estrada*, 582 F. App'x 348 (5th Cir. 2014); *Marshall v. Russell*, 391 F. Supp. 3d 672 (S.D. Tex. 2018); *Releford v. City of Houston*, No. 4:14-CV-2810, 2016 WL 774552 (S.D. Tex. Feb. 29, 2016); *Khansari v. City of Houston*, 14 F. Supp. 3d 842 (S.D. Tex. 2014).

This court's unpublished opinions do not clearly establish a constitutional right. *E.g.*, *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) ("Because nonprecedential opinions do not establish any binding law for the circuit, they cannot be the source of clearly established law for qualified immunity analysis." (citation omitted)); *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 341 n.105 (5th Cir. 2020) (noting that although unpublished cases "cannot clearly establish the law," they "can illustrate or guide us to such authority, by restating what was clearly established in precedents they cite or elsewhere" (citation omitted)). Likewise, district court opinions do not bind any court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding

precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).

At oral argument, Appellants conceded that there is no case on all fours with the facts at hand. Again, they fail to show the question at hand is "beyond debate."

2.

Alternatively, Appellants maintain that the Deputy's actions violated Thomas's "obvious" right under *Garner* and *Graham*. This court's recent "obvious" cases show to the contrary. In *Newman v. Guedry*, the officer beat and tasered a *compliant*, non-threatening person who did not commit a crime. 703 F.3d 757, 759–60, 764 (5th Cir. 2012). In *Cole v. Carson*, this court concluded that the police obviously violated *Graham* by shooting a suicidal teenager from behind and without warning. 935 F.3d 444, 449, 453 (5th Cir. 2019) (*en banc*). And in *Roque v. Harvel*, this court stated: "*Garner*, *Mason*, and *Graves* . . . . show that by 2017, it was clearly established—and possibly even obvious—that an officer violates the Fourth Amendment if he shoots an unarmed, incapacitated suspect who is *moving away* from everyone present at the scene." 993 F.3d 325, 339 (5th Cir. 2021) (emphasis added).[1]

On one hand, Thomas's pants were around his ankles (but did not impede his movements), and the Deputy used a lethal weapon instead of using his taser. On the other, Thomas was non-compliant to the Deputy's commands to get on the ground, and the Deputy warned him that he was going to shoot. Thomas was also continuously advancing on the Deputy

---

[1] In *Graves v. Zachary*, an unpublished and therefore non-precedential decision, this court stated: "It does not take a specific case for an officer to know that he cannot shoot a *compliant* suspect and that he cannot fire again at someone who is objectively 'downed or incapacitated.'" 277 F. App'x 344, 349 (5th Cir. 2008) (emphasis added). Unlike the plaintiff in *Graves*, Thomas was not "downed or incapacitated."

despite the Deputy's attempt to keep distance between them. Therefore, this is not one of those rare "obvious" cases. *See Batyukova*, 994 F.3d at 726 ("[T]here can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (citation omitted)).

Appellants fail to satisfy the second prong of the qualified-immunity analysis. The district court therefore appropriately granted summary judgment in favor of the Deputy.

## B.

Appellants also challenge the district court's decision to grant summary judgment in favor of the County on their *Monell*, ADA, and RA claims. We first address the numerous *Monell* claims.

## 1.

Local governments, such as the County, may be held liable through a suit under § 1983 if "action pursuant to [a local-government] policy of some nature *caused* a constitutional tort." *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasis added). Appellants assert that the County is liable under *Monell* because it had an official policy of failing to review use-of-force policies, procedures, and practices; failed to provide less-lethal equipment; had "a pattern demonstrating [both] excessive force against African American males and those in medical crisis" and "failure to render medical aid"; and failed to train its deputies.

The magistrate judge's report, which the district court adopted, dealt with each of these claims in detail. It concluded that (1) Appellants failed to show that the County was deliberately indifferent with respect to any failure to review use-of-force policies; (2) uncontroverted evidence shows that the County did equip officers with less-lethal force options (specifically, a taser);

No. 22-20482

(3) Appellants failed to demonstrate a pattern of sufficiently similar excessive-force violations or a pattern of failing to render medical aid; and (4) Appellants failed to show that the Deputy was inadequately trained or that the County was deliberately indifferent with respect to his training.  We agree with the magistrate judge and the district court that Appellants' *Monell* claims fail for these reasons.[2]

2.

Regarding the ADA and RA claims, for the former, see 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); for the latter, see 29 U.S.C. § 794(a) (prohibiting discrimination "solely by reason of her or his disability").

Appellants' brief only highlights *Hainze v. Richards*, but, without additional citation, argues against its application.  207 F.3d 795, 801 (5th Cir. 2000) (holding that "Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life").  Yet we are bound by *Hainze*.

---

[2] Appellants lack support for any claim that the County ratified a custom or practice of excessive force.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").  In this case, the Sheriff not only refused to defend the Deputy following the shooting but also fired him.

#### a.

In any event, Appellants do not address their failure to show a *prima facie* ADA claim. *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (outlining "prima facie case of discrimination under the ADA"). Along that line, that claim is forfeited because Appellants failed to adequately brief it. *E.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits [a contention] . . . by failing to adequately brief [it] on appeal." (citation omitted)).

#### b.

The RA claim is likewise forfeited. It is barely mentioned, and, as conceded at oral argument, was included in Appellants' brief only to show similarity to the ADA and "as a point of reference."

For the foregoing reasons, the judgment is AFFIRMED.